UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RACHEAL GUILD,

    Plaintiff,

v.

SHERIFF MICHAEL SHEA,
UNDERSHERIFF JAMES CUDDIE,
LIEUTENANT CHAD SMITH,
LIEUTENANT TROY RABIDUE,
AND SERGEANT BRIAN GOSS

    Defendants.

_____/

Case No. 26-
Hon.

THE MASTROMARCO FIRM
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
AMIA I. JACKSON (P88568)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromarco@mastromarcofirm.com
kkelly@mastromarcofirm.com

_____/

**<u>PLAINTIFF'S COMPLAINT & DEMAND FOR TRIAL BY JURY</u>**

NOW COMES Plaintiff, RACHEAL GUILD, by and through her attorneys,

THE MASTROMARCO FIRM, and hereby complains against Defendants, stating

as follows:

## COMMON ALLEGATIONS

1.      That Plaintiff is, at all times material hereto, a resident of the County of Gladwin, State of Michigan and is domiciled in the State of Michigan.

2.      That at all times material hereto all Defendants conducted business and were otherwise domiciled in the State of Michigan.

3.      That this Honorable Court has jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.      That the amount in controversy exceeds the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) exclusive of costs, interest, and attorney fees.

5.      That Plaintiff graduated police academy on or about May 6, 2023.

6.      That on or about May 8, 2023, Michigan Commission on Law Enforcement (hereto "MCOLES") activated Plaintiff's officer license.

7.      That Plaintiff started at Gladwin Sheriff Office as a Sheriff's Deputy immediately after graduating.

8.      That at all times relevant hereto Plaintiff was exceptionally qualified for the position, possessing the requisite training, certifications, and professional experience required of a deputy sheriff.

9.      That at the time Gladwin Sheriff's Office hired Plaintiff it also hired

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

two other individuals Jeremy Renshaw and Evan Bussell, both of whom also graduated from the academy with Plaintiff.

10.    That at all relevant times Defendant Gladwin Sheriff Department's deputies were all White males, with the exception of Plaintiff.

11.    That Plaintiff is a Black female.

12.    That within Plaintiff's first days at Gladwin Sheriff's Office, Defendant Sheriff Michael Shea told Plaintiff that hiring her would "really help the department's numbers."

13.    That additionally soon after Plaintiff began at Gladwin County Sherrif's Officer Defendant, Lieutenant Chad Smith, would refer to Plaintiff as "Ray-Ray."

14.    That "Ray Ray" is commonly used as a pejorative to refer to Black individuals.

15.    That referring to a Black person as "Ray Ray," particularly within American social settings, carries derogatory connotations linked to poverty, criminality, and/or ignorance and is commonly employed in a manner that casts the individual in a negative and demeaning light[1].

16.    That Plaintiff does not now, nor has she ever gone by the name "Ray

---

[1] https://www.axios.com/local/detroit/2024/06/07/detroit-lawmaker-faces-backlash-for-pookie-and-ray-ray-comments

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

Ray."

17.     That Plaintiff did not tell Lieutenant Chad Smith or anyone else at the department, to call her "Ray Ray."

18.     That this comment was inappropriate and racially charged.

19.     That Plaintiff prepared her reports and other paperwork using the templates Lieutenant Smith provided.

20.     That despite using the report templates provided to her, Defendants routinely reprimanded and singled out Plaintiff for alleged deficiencies in her written work, while rarely offering any guidance on how she could improve her reports.

21.     That Plaintiff observed other deputies regularly submitting reports with minimal detail or including irrelevant information for which she was disciplined, yet their reports were not "kicked back" as hers were, further demonstrating the disparate scrutiny applied to Plaintiff.

22.     That Plaintiff specifically noticed Deputy Warner, a white male, omitted certain information from his reports without facing discipline, leading her to believe she should model her reports after his.

23.     That on or about June 25, 2024, Lieutenant Rabidue sent Undersheriff Hartwell a letter describing a conversation with Plaintiff in which Rabidue admonished her for not "turning in good work."

24.     That although Plaintiff, Mr. Renshaw, and Mr. Bussell were all newly

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

deputized officers, Defendant Sergeant Brian Goss frequently singled out Plaintiff for vehicle inspections.

25.     That Defendant Goss would "inspect" Plaintiff's until vehicle at the start of every shift and did not conduct similar inspections for Bussell or Renshaw.

26.     That Sgt. Goss also repeatedly directed Plaintiff to open doors for him.

27.     That Plaintiff never observed Sgt. Goss direct any other officer to his doors for him.

28.     That Defendant Goss required Plaintiff to perform tasks for no legitimate purpose, but instead in attempts to publicly humiliate Plaintiff.

29.     That Defendant Lieutenant Rabidue received reports about Plaintiff's fears that Defendant Goss was displaying differential treatment towards Plaintiff.

30.     That instead of investigating Plaintiff's complaints regarding Sgt. Goss, Defendant Rabidue stated in his own report that he retaliated against Plaintiff by selectively activating his body-worn camera during interactions with Plaintiff. **EXHIBIT 1.**

31.     That Defendant Rabidue did this not for legitimate law-enforcement purposes, but in an effort to unfairly monitor Plaintiff, in hopes of capturing Plaintiff making statements critical of Sgt. Goss.

32.     That during nighttime patrol at some point, Deputy Dustin Johnson said he needed to "put glowsticks on [Plaintiff]" so that he and other officers could see

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

her in the dark.

33. That Johnson's comment was racially derogatory and said to make fun of Plaintiff's deep complexion.

34. That several other officers were present when Johnson made the comment and instead of facing reprimand, Johnson received a round of laughter from the other Gladwin County officers in response to his "joke" about the color of Plaintiff's skin.

35. That this incident was not the first time Deputy Johnson made egregiously racist remarks.

36. That frequently made comments to Deputy Renshaw about Renshaw's wife, specifically targeting her race.

37. That at all relevant times Deputy Renshaw's wife was a Black woman.

38. That at one point Johnson reportedly made a comment that Renshaw's wife should be lynched/hung.

39. That references to Black Americans in connection with lynching carry widely recognized historical meaning and communicate racially hostile and threatening overtones.[2]

40. That Johnson's racially charged comments caused significant tension and animosity between him and Deputy Renshaw.

---

[2] https://www.pbs.org/wgbh/americanexperience/features/emmett-lynching-america/

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

41. That Deputy Renshaw left Gladwin Sheriff's Office partially because of the frequent and disturbing references to his wife made throughout the department.

42. That since Plaintiff began working at Gladwin Sheriff's Office, there were two bathroom facilities on the bottom floor of the department, although two facilities suggested the bathrooms were gendered, male officers used both restrooms without restriction.

43. That on multiple occasions, Plaintiff avoided using the restroom when certain male officers were present because they did not close the stalls, forcing her to choose between significant discomfort or forgoing restroom access altogether.

44. That on or about February 6, 2025, while driving her patrol vehicle during late-night hours in inclement weather, Plaintiff accidentally drove off the highway and became stuck in a roadside ditch, at which point she contacted Defendant Sergeant Troy Cuddie.

45. That when Sgt. Cuddie asked Plaintiff what had occurred, Plaintiff initially stated that she had swerved to avoid a deer but immediately corrected herself, explaining that accidentally veered off the roadway when she briefly looked down at her phone.

46. That on or about February 10, 2025, Plaintiff received a written discipline from, then Undersheriff, Hartwell arising out of the motor vehicle

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

accident.

47. That the written discipline included purported violations of the department's dishonesty and truthfulness policy, failure to report for duty, failure to give adequate attention to the roadway, refusal to follow orders, and incompetence. **EXHIBIT #2.**

48. That the corrective actions imposed on Plaintiff included immediate reassignment to the day shift for review of her performance and fitness for duty, a three-day suspension without pay, mandatory briefings with a supervisor at the beginning and end of each shift, and additional corrective measures.

49. That the majority of the alleged violations included in the disciplinary write-up were misleading, taken out of context, and/or included for no purpose other than to improperly inflate Plaintiff's disciplinary record.

50. That the write-up principally accused Plaintiff of intentionally being dishonest with her superiors, which appeared to be the central justification advanced for the disciplinary action.

51. That Defendants' characterization of Plaintiff as a dishonest officer is misleading as it is based on statements, she made to Sgt. Cuddie immediately following a motor vehicle accident in which her patrol car entered a roadside ditch.

52. That Sgt. Cuddie's own written report of the incident, submitted to the Gladwin County Sheriff's Office on or about February 7, 2025, three days before

Plaintiff was issued the disciplinary write-up, states that when he arrived at the scene Plaintiff was "highly emotional and hyperventilating." **EXHIBIT 3.**

53. That Sgt. Cuddie's report went on to say that once Plaintiff was able to speak, she first answered his questions stating that she saw a deer but that when Cuddie asked again Plaintiff instantly "admitted she was not paying attention and did not see the curve until it was too late." **EXHIBIT 2.**

54. That, in Sgt. Cuddie's written report, he noted that when he asked Plaintiff why she initially referenced a deer, Plaintiff explained that "she was scared."

55. That in the days following the incident, Plaintiff had several additional conversations with her superiors regarding the accident, and each time she was asked how it occurred, she consistently explained what actually happened, further demonstrating that her initial statement to Sgt. Cuddie, made minutes after her accident, while she was overwhelmed and experiencing extreme anxiety.

56. That on or about April 30, 2025, Defendants questioned Plaintiff regarding a photograph of her and accused her of misconduct and immorality. **EXHIBIT #4.**

57. That Defendants represented to Plaintiff that on or about April 28, 2025, Defendants became aware of a selfie photograph Plaintiff took of herself in the car wearing what appeared to be a law-enforcement uniform.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

58.     The photograph did not display any badge numbers, department name, patrol vehicle markings, or any other information identifying the Gladwin County Sheriff's Office.

59.     That the photograph did not indicate where Plaintiff worked and was not taken in an official or representative capacity.

60.     That apparently a deputy brought the photograph to Defendants after he noticed it posted on a dating website for couples

61.     That Plaintiff's husband, Greg Guild, posted the photo to the website.

62.     That at all relevant times hereto Plaintiff was and is married to another Gladwin County Sheriff's Office Deputy, Mr. Guild.

63.     That despite Defendants knowing that Mr. Guild is who made the post, Defendants did not discipline, reprimand, investigate, or counsel Mr. Guild for the conduct.

64.     That Defendants even acknowledged that there were innocuous photographs of Mr. Guild (much like the photograph of Plaintiff) that Mr. Guild had posted on the same website

65.     That Defendants initiated a disciplinary investigation solely against Plaintiff.

66.     That in Defendants' April 30, 2025, meeting with Plaintiff, Defendants acknowledged that an employee's off-duty activity or lifestyle is generally of no

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

concern to the Sheriff's Office.

67.     That Defendants accused Plaintiff of violating internal policies despite the fact that the photograph was taken off duty, was not posted by Plaintiff, and did not identify the Sheriff's Office.

68.     That on or about May 5, 2025, Defendants issued Plaintiff a written reprimand and imposed a three-day unpaid suspension, expressly warning her that any future perceived violations could result in termination. **EXHIBIT 5.**

69.     That Defendants further characterized Plaintiff's conduct as a "morality" issue, despite the absence of any written policy prohibiting the conduct alleged and despite the lack of any legitimate law-enforcement purpose served by the discipline.

70.     That following that discipline, Defendants began aggressively policing Plaintiff's conduct, work performance, and compliance with internal rules in a manner that far exceeded the scrutiny applied to similarly situated White male deputies.

71.     That Defendants repeatedly subjected Plaintiff to disciplinary meetings, threats of further punishment, imposed restrictive conditions (including prohibitions on posting photographs), heightened monitoring, and formal reprimands.

72.     That Defendants actions against Plaintiff were based on minor, technical, or subjective allegations that were routinely overlooked when committed

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

by other deputies.

73. Shortly after the May 5th write up, Defendants placed Plaintiff on a Personal Improvement Plan (PIP), assigning her to report directly to Sgt. Goss, who had previously demonstrated hostility toward her and who now exercised broad discretion over her continued employment

74. That Defendants repeatedly communicated, both expressly and implicitly, that Plaintiff's job was in jeopardy and that her continued employment depended on satisfying Defendant Goss' moving, subjective, and inconsistently enforced standards.

75. That as a result of Defendants' actions, Plaintiff experienced significant emotional distress, anxiety, and physical symptoms, which interfered with her ability to function both at work and outside of work.

76. That by the summer of 2025, the cumulative effects of Defendants' conduct caused Plaintiff's health to deteriorate to the point that her medical providers advised she seek medical leave.

77. That on or about July 9, 2025, Plaintiff submitted a formal request for leave under the Family and Medical Leave Act (FMLA) due to serious mental and medical conditions caused and/or exacerbated by workplace stress and hostility. **EXHIBIT 6.**

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

**78.**    That rather than engaging in the FMLA process in good faith, Defendant Lieutenant Smith required that Plaintiff to exhaust her paid time off ("PTO") she could apply for FMLA benefits. **EXHIBIT 7.**

79.    That Plaintiff then had to use her PTO and wait approximately a month from the date she originally applied for FMLA to re-apply for FMLA.

80.    That Plaintiff exhausted her PTO by July 20, 2025.

81.    That when Plaintiff returned from her PTO leave the harassment at Gladwin County Sheriff's department continued.

82.    That Plaintiff reasonably understood that upon returning from medical leave, she would face renewed discipline, continued scrutiny.

83.     That on or about July 28, 2025, Plaintiff submitted her resignation, effective August 10, 2025.

84.    That "[a] constructive discharge occurs when an employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Manning v City of Hazel Park*, 202 Mich App 685, 697, 509 N.W.2d 874 (1993).

85.    That Plaintiff's resignation was not voluntary in any meaningful sense, but rather was the foreseeable and intended result of Defendants' sustained efforts to make her working conditions so unbearable that a reasonable person in her position would have felt compelled to resign.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

86. Defendants' conduct amounted to a constructive discharge.

87. That Plaintiff's constructive discharge was the direct and proximate result of Defendants' discrimination on the basis of race and sex, retaliation, and interference with Plaintiff's protected rights.

88. That at all relevant times, Plaintiff Racheal Guild was the only Black deputy and the only female deputy employed by Gladwin County Sheriff's Office.

89. That the discipline imposed and threatened against Plaintiff was grossly disproportionate, unsupported by policy, and inconsistent with how Defendants treated similarly situated White male deputies.

90. That Defendants' decision to discipline Plaintiff, but not her White male husband, for the same alleged conduct constitutes unequal enforcement of workplace rules.

91. That following Plaintiff's constructive discharge, Defendants further discriminate against Plaintiff by initiating a civil lawsuit against her, falsely alleging that she voluntarily abandoned her position before completing sixty (60) months of service and thereby breaching a contractual agreement entered into at the time she attended the police academy. **EXHIBIT 8.**

92. That Defendants served this lawsuit on Plaintiff on or about March 23, 2026.

93. That upon entering the police academy, Defendant Gladwin County

Sheriff's Office agreed to pay Plaintiff approximately twelve dollars ($12.00) per hour for her academy training as part of a longer-term employment arrangement, pursuant to which Plaintiff agreed to join Gladwin's sheriff department upon graduating from the academy.

94. That after Plaintiff was discriminatorily forced out of her employment, Gladwin County filed a lawsuit against Plaintiff in Wexford County District Court seeking damages in the amount of approximately $3,820.95.

95. That Defendants characterize this amount as a prorated portion of the alleged "full cost" of Plaintiff's academy training based on the difference between number of months Plaintiff worked for Gladwin and the sixty (60) months Defendants claim were required.

96. That this lawsuit is unlawful and improperly motivated for at least two independent reasons: first, **Plaintiff did not voluntarily terminate her employment but was constructively discharged** as a result of Defendants' discriminatory and retaliatory conduct; **and** second, **Defendants have not enforced this alleged repayment obligation uniformly** against other employees who left the department before completing sixty (60) months of service.

97. That specifically, Jeremy Renshaw (referenced above in paragraphs six through seven and thirty-one through thirty-seven) resigned from the Gladwin County Sheriff's Office approximately one year before Plaintiff's discharge due to

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

prejudice and hostility directed toward his spouse.

98.     That Renshaw and Plaintiff both graduated from the police academy and started working at Gladwin at the same time.

99.     That Renshaw, a Caucasian male, was not required to repay any portion of his academy or training costs despite leaving the department before Plaintiff.

100.    That Defendants' decision to demand repayment from Plaintiff but not from Renshaw constitutes disparate treatment on the basis of race, as Plaintiff is Black and Renshaw is Caucasian.

101.    That Defendants' decision to demand repayment from Plaintiff but not from Renshaw also constitutes disparate treatment on the basis of sex, as Plaintiff is female and Renshaw is male.

102.    That as a direct and proximate result of Defendants' discriminatory, retaliatory, and unlawful actions, including the filing of a retaliatory lawsuit, Plaintiff has suffered emotional distress, reputational harm, financial injury, and other adverse employment and post-employment consequences.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees, along with any and all legal and/or equitable relief this Court deems just.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

## COUNT I – RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

103.   That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 102 of her Common Allegations word for word, paragraph for paragraph, as if fully restated herein.

104.   That Title VII of the Civil Rights Act of 1964 makes it an "unlawful employment practice for an employer . . . to discharge any individual, or otherwise discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment because of such an individual's race." 42 U.S.C. § 2000-e2(a).

105.    That the Plaintiff is a member of a protected class by virtue of her race, African American.

106.   That at all times material hereto, Defendant was Plaintiff's "employer" as defined by federal law. 42 U.S.C. § 2000e(b).

107.   That at all times material hereto, Plaintiff was qualified for her position.

108.   That the Defendant intentionally subjected Plaintiff to racial discrimination.

109.   That the Defendant took adverse action against Plaintiff under circumstances that give rise to an inference of discrimination.

110.   That Defendant treated individuals outside of Plaintiff's protected class in a more preferential manner.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

111. That the reasons proffered by Defendant for the adverse action are pretextual in nature, are not based in fact, did not actually motivate its decision, and/or were too insignificant to warrant the action.

112. That the Defendant's actions constitute race discrimination in violation of Title VII of the Civil Rights Act of 1964.

113. That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer severe economic damages, including, but not limited to, lost wages, back pay, front pay, raises, bonuses, over time, health, dental, vision, and life insurance benefits, retirement benefits, investment opportunities, employer contributions, and any other compensation and fringe benefits provided by Defendant along with an addition amount to offset any negative tax consequences of recovery.

114. That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer severe non-economic damages including, but not limited to, emotional distress, mental anguish, sense of indignity, humiliation, embarrassment, nervousness, anxiety, depression, disruption of lifestyle, and denial of social pleasures.

115. That Plaintiff hereby claims compensatory and punitive damages pursuant to 42 U.S.C. § 1981a.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

116.   That Plaintiff hereby claims the costs of this action and reasonable attorney fees and expert witness fees pursuant to 42 U.S.C. § 2000e-5(k).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees, along with any and all legal and/or equitable relief this Court deems just.

## COUNT II- RACE DISCRIMINATION IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

117.   That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 102 of her Common Allegations and paragraphs 103 through 116 of Count I, word for word and paragraph for paragraph, as if fully restated herein.

118.   That the Elliott-Larsen Civil Rights Act makes it unlawful for an employer to discharge or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of age.  MCL 37.2202(1)(a).

119.   That at all times material hereto, Defendant was and is an "employer," as defined by the Act.  MCL 37.2201(1).

120.   That at all times material hereto, Plaintiff was and is a member of a protected class by virtue of her race and gender.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

121.   That at all times material hereto, Plaintiff was and is qualified for the position she held at Gladwin County Sheriff's Department.

122.   That Defendant took adverse employment action against Plaintiff by constructively terminating her employment.

123.   That Plaintiff suffered said adverse employment action under circumstances that give rise to an inference of discrimination.

124.   That Defendant failed to provide Plaintiff a legitimate, nondiscriminatory reason for the termination of her employment.

125.   That any reasons offered by Defendant for taking said adverse employment action are pretextual in nature.

126.   That any reasons offered by Defendant for taking said adverse employment action are either not based in fact, did not actually motivate the decision, and/or were too insignificant to warrant the action taken.

127.   That Defendant's actions constitute race and gender discrimination in violation of the Elliott-Larsen Civil Rights Act.

128.   That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, promotions, raises, bonuses, health, dental, vision, and/or life insurance benefits, short-term and/or long-term disability benefits, retirement and/or pension benefits, investment opportunities, employer

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

contributions, and any and all other compensation and fringe benefits Plaintiff would have received along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

129.   That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer noneconomic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

130.   That Plaintiff hereby claims the costs of the litigation, including reasonable attorney fees and witness fees, pursuant to MCL 37.2801 and MCL 37.2802.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees, along with any and all legal and/or equitable relief this Court deems just.

## COUNT III – SEX DISCRIMINATION
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

131.   That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 102 of her Common Allegations, paragraphs 103 through 116 of Count I, and paragraphs 117 through 130 of Count II, word for word

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

and paragraph for paragraph, as if fully restated herein.

132. That this Court has jurisdiction over this matter pursuant to Title VII of the Civil Rights Act of 1964, which prohibits employment discrimination based on sex.

133. That Defendants' actions constitute sex discrimination in violation of Title VII of the Civil Rights Act of 1964.

134. That it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1).

135. That at all times material hereto, Defendant was Plaintiff's "employer" as defined by Title VII.

136. That at all times material hereto, Plaintiff was and is a member of a protected class by virtue of her sex, female.

137. That at all times material hereto, Plaintiff was qualified for her position.

138. That the Defendant intentionally subjected Plaintiff to discrimination based on sex/gender.

139. That the Defendant took adverse action against Plaintiff under circumstances that give rise to an inference of discrimination.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

140.   That Defendant treated individuals outside of Plaintiff's protected class in a more preferential manner.

141.   That the reasons proffered by Defendant for the adverse action are pretextual in nature, are not based in fact, did not actually motivate its decision, and/or were too insignificant to warrant the action.

142.   That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer severe economic damages, including, but not limited to, lost wages, back pay, front pay, raises, bonuses, over time, health, dental, vision, and life insurance benefits, retirement benefits, investment opportunities, employer contributions, and any other compensation and fringe benefits provided by Defendant along with an addition amount to offset any negative tax consequences of recovery.

143.   That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer severe non-economic damages including, but not limited to, emotional distress, mental anguish, sense of indignity, humiliation, embarrassment, nervousness, anxiety, depression, disruption of lifestyle, and denial of social pleasures.

144.   That Plaintiff hereby claims compensatory and punitive damages pursuant to 42 U.S.C. § 1981a.

145.   That Plaintiff hereby claims the costs of this action and reasonable

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

attorney fees and expert witness fees pursuant to 42 U.S.C. § 2000e-5(k).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees, along with any and all legal and/or equitable relief this Court deems just.

## COUNT IV- SEX DISCRIMINATION IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

146. That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 102 of her Common Allegations, paragraphs 103 through 116 of Count I, paragraphs 117 through 130 of Count II, and paragraphs 131 through 145 of Count III, word for word and paragraph for paragraph, as if fully restated herein.

147. That the Elliott-Larsen Civil Rights Act makes it unlawful to discharge or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of sex. MCL 37.2202(1)(a).

148. That at all times material hereto, Defendants were Plaintiff's "employer" as defined by the Act. MCL 37.2201(a).

149. That at all times material hereto, Defendants could control or affect a term, condition, or privilege of Plaintiff's employment.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

150. That Defendants took adverse employment action against Plaintiff, including, but not limited to, constructively discharging her employment.

151. That Defendants took actions that made Plaintiff's working conditions so intolerable that a reasonable person would feel compelled to resign.

152. That Plaintiff suffered said adverse actions under circumstances that give rise to an inference of discrimination.

153. That Defendants lack any legitimate, non-discriminatory and/or non-retaliatory reason for discharging Plaintiff from employment.

154. That any reasons proffered by Defendants for discharging Plaintiff from employment are pretextual in nature.

155. That any reasons proffered by Defendants for discharging Plaintiff from employment either are not based in fact, did not actually motivate the decision, and/or were too significant to warrant the action taken.

156. That Defendants' actions constitute sex discrimination in violation of the Elliott-Larsen Civil Rights Act.

157. That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, raises, bonuses, promotions, health, dental, vision, and/or life insurance benefits, disability benefits, investment opportunities, pension and/or retirement benefits, and any and all other

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

compensation and fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

158. That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer noneconomic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, humiliation, embarrassment, nervousness, anxiety, depression, disruption of lifestyle, and denial of social pleasures.

159. That Plaintiff hereby claims the costs of the litigation, including reasonable attorney fees and witness fees, pursuant to MCL 37.2801 and MCL 37.2802.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees, along with any and all legal and/or equitable relief this Court deems just.

## COUNT V - VIOLATION OF THE MICHIGAN WAGE AND FRINGE BENEFIT ACT DECLARATORY JUDGMENT – VOID AND UNENFORCEABLE TRAINING REPAYMENT AGREEMENT

160. That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 102 of her Common Allegations, paragraphs 103 through 116 of Count I, paragraphs 117 through 130 of Count II, paragraphs 131 through 145 of Count III, and word 146 through 159 of Count IV for word and

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

paragraph for paragraph, as if fully restated herein.

161.    That at all relevant times, Defendants required Plaintiff, as a condition of employment and as a prerequisite to receiving required police academy training, to enter into a purported "Contract for Training" obligating her to reimburse Gladwin County for the costs of her training if she did not remain employed for a specified period.

162.    That the training at issue was mandatory, job-required, and undertaken solely for the benefit of Defendants to qualify Plaintiff to serve as a sworn deputy sheriff.

163.    That the repayment provision was imposed unilaterally by Defendants and was not freely negotiated, optional, or independent of Plaintiff's employment relationship.

164.    That Plaintiff was required to sign the training repayment agreement as a condition of obtaining and maintaining employment with the Gladwin County Sheriff's Office.

165.    That the Michigan Wage and Fringe Benefit Act ("WFBA"), MCL 408.471 et seq., prohibits employers from requiring employees to return wages or employment benefits already earned as a condition of employment.

166.    That in *Sands Appliance Services, Inc. v. Wilson*, 463 Mich. 231 (2000), the Michigan Supreme Court held that tuition or training reimbursement agreements

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

imposed as a condition of employment violate the WFBA and are void and unenforceable.

167. That Michigan courts have consistently applied *Sands* to invalidate training repayment agreements required as a prerequisite to employment or continued employment.

168. That the purported contract Defendants now seek to enforce against Plaintiff constitutes an unlawful attempt to recover wages, benefits, and training expenses already earned and lawfully paid to Plaintiff during her employment.

169. That Defendants' attempt to enforce the repayment provision, particularly after constructively discharging Plaintiff through discriminatory and retaliatory conduct, further underscores the illegality and inequity of the agreement.

170. That because the training repayment agreement was required as a condition of Plaintiff's employment, it violates the WFBA and is unenforceable as a matter of Michigan law.

171. That an actual controversy exists between the parties regarding the validity and enforceability of the training repayment agreement, and Plaintiff seeks declaratory relief pursuant to 28 U.S.C. § 2201.

172. That this Honorable Court has supplemental jurisdiction over Plaintiff's WFBA state law claims pursuant to 28 U.S.C. § 1367.

173. That as a direct and proximate result of Defendants' unlawful conduct

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

and attempts to enforce a void agreement, Plaintiff has suffered and continues to suffer harm, including financial injury, emotional distress, and the burden of retaliatory litigation.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter declaratory judgment in her favor and award and costs, interest, and/or attorney fees, this Court deems just.

Respectfully submitted,
THE MASTROMARCO FIRM

Dated: <u>March 30, 2026</u>     By:   */s/ Victor J. Mastromarco, Jr.*
                                    VICTOR J. MASTROMARCO, JR. (P34564)
                                    KEVIN J. KELLY (P74546)
                                    AMIA I. JACKSON (P88568)
                                    Attorneys for Plaintiff
                                    1024 N. Michigan Avenue
                                    Saginaw, Michigan 48602
                                    (989) 752-1414

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RACHEAL GUILD,

    Plaintiff,

Case No. 26-

Hon.

v.

SHERIFF MICHAEL SHEA,
UNDERSHERIFF JAMES CUDDIE,
LIEUTENANT CHAD SMITH,
LIEUTENANT TROY RABIDUE,
AND SERGEANT BRIAN GOSS

    Defendants.

_____/

THE MASTROMARCO FIRM
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
AMIA I. JACKSON (P88568)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromarco@mastromarcofirm.com
kkelly@mastromarcofirm.com

_____/

## **DEMAND FOR TRIAL BY JURY**

NOW COMES Plaintiff, RACHEAL GUILD, by and through her attorneys,

THE MASTROMARCO FIRM, and hereby demands a trial by jury on all the above

issues, unless otherwise expressly waived.

Respectfully submitted,
THE MASTROMARCO FIRM

Dated: <u>March 30, 2026</u>　　　By:　*/s/ Victor J. Mastromarco, Jr.*

VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
AMIA I. JACKSON (P88568)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414